IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MERRITT PAXTON PHILLIPS, Individually**
**and as Personal Representative on Behalf of the**
**Wrongful Death Beneficiaries of**
**MERRITT BENJAMIN PHILLIPS**                                                    **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 3:15cv412-HTW-LRA**

**QUALITY CHOICE HEALTHCARE, INC.**
**d/b/a Quality Choice Correctional Healthcare,**
**HINDS COUNTY, MISSISSIPPI, SHERIFF**
**TYRONE LEWIS, in His Individual Capacity**
**as Sheriff of Hinds County, Mississippi, JOSEPH RAY,**
**in His Individual Capacity as a Deputy of Hinds County,**
**Mississippi, PETRINE GATHRITE, in Her Individual**
**Capacity as a Deputy of Hinds County, Mississippi, TABITHA**
**THOMAS, in Her Individual Capacity as a Deputy of Hinds**
**County, Mississippi, CONTINA THOMAS, in Her Individual**
**Capacity as a Deputy of Hinds County, Mississippi, TARI**
**THOMPSON, in Her Individual Capacity as a Deputy of Hinds**
**County, Mississippi, JOSEPHINE MCLAURIN, in Her Individual**
**Capacity as a Deputy of Hinds County, Mississippi, FELICIA**
**ADAMS, in Her Individual Capacity as a Deputy of Hinds County,**
**Mississippi, SCOTTIE MOORE, in His Individual Capacity as**
**a Deputy of Hinds County, Mississippi, JASMINE CULLINS, in Her**
**Individual Capacity as a Deputy of Hinds County, Mississippi.**
**CHERRONA NOEL, in Her Individual Capacity as a Deputy of Hinds**
**County, Mississippi, MONTREAL BINGHAM, in His Individual**
**Capacity as a Deputy of Hinds County, Mississippi, EVERLENE,**
**ESKRIDGE, in Her Individual Capacity as a Deputy of Hinds**
**County, Mississippi, JONATHAN BRISTER, in His Individual**
**Capacity as a Deputy of Hinds County, Mississippi, DEMETRIUS**
**KNIGHT, in His Individual Capacity as a Deputy of Hinds County,**
**Mississippi, V. JOHNSON, in His Individual Capacity as a Deputy of**
**Hinds County, Mississippi, ZANDRA BRANCH, in Her Individual**
**Capacity as a Deputy of Hinds County, Mississippi, RICHARD**
**WOODHOUSE, in His Individual Capacity as a Deputy of Hinds**
**County, Mississippi, DANIELLE MOSES, in Her Individual Capacity**
**as a Deputy of Hinds County, Mississippi, PORSHA MCMULTREY, in Her**
**Individual Capacity as a Deputy of Hinds County, Mississippi, and**
**JOHN AND JANE DOES 1 – 100**                                                    **DEFENDANTS**

## AMENDED COMPLAINT

### *Jury Trial Demanded*

1.      This Amended Complaint is brought by Merritt Paxton Phillips (hereinafter, "Plaintiff"), Individually and as Personal Representative on behalf of the wrongful death beneficiaries of Merritt Benjamin Phillips (hereinafter, "Decedent"), by and through undersigned counsel, against Quality Choice Healthcare, Inc. d/b/a Quality Choice Correctional Healthcare, Sheriff Tyrone Lewis, Joseph Ray, Petrine Gathrite, Tabitha Thomas, Contina Thomas, Tari Thompson, Josephine McLaurin, Felicia Adams, Scottie Moore, Jasmine Cullins, Cherrona Noel, Montreal Bingham, Everlene Eskridge, Jonathan Brister, Demetrius Knight, V. Johnson, Zandra Branch, Richard Woodhouse, Danielle Moses, Porsha McMultrey and John Does 1 – 100.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343, as well as 42 U.S.C. § 1983.  Subject matter jurisdiction is appropriate in federal court since a federal question is raised pursuant to the 8th and 14th Amendments to the United States Constitution.

3.      Venue is appropriate in this Court under § 1391(b) and § 1392, as all acts and/or omissions occurred in Hinds County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

## PARTIES

4.      Plaintiff, Merritt Paxton Phillips, is an adult resident citizen of the First Judicial District of Hinds County, Mississippi.  His current residence is 1321 Poplar Boulevard, Jackson, Hinds County, Mississippi 39202.  Plaintiff, the natural father of the Decedent, brings this action individually and on behalf of the surviving heirs/wrongful death beneficiaries of Decedent:

Merritt Paxton Phillips, as his natural father, whose current residence is 1321 Poplar Boulevard, Jackson, Hinds County, Mississippi 39202; Angela Denise Bailey Phillips, his natural mother, whose current residence is 1321 Poplar Boulevard, Jackson, Hinds County, Mississippi 39202; and Julie Anne Phillips, his natural sister, whose residence is 1321 Poplar Boulevard, Jackson, Hinds County, Mississippi 39202.

5.      Decedent was, at all times material to this Complaint, an adult incarcerated at the Hinds County Detention Center (hereinafter, "HCDC").  Substantial acts, omissions, and events that caused the Decedent's death took place in Hinds County, Mississippi.  At the time of the incident which gives rise to this Complaint, Decedent was a 36-year old citizen of the State of Mississippi, and a prisoner incarcerated at the Hinds County Detention Center.  Plaintiff, as Personal Representative, brings this action pursuant to Mississippi Code Ann. § 11-7-13 (1972), the Wrongful Death Statute.

6.      Defendant, Quality Choice Healthcare, Inc. d/b/a Quality Choice Correctional Healthcare (hereinafter, "QCCHC"), a for-profit private medical company incorporated and existing in the state of New York, is under contract with Hinds County, Mississippi, to provide the inmates housed at the HCDC with on-site medical care.  Under its contract with Hinds County, QCCHC has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards.  QCCHC's principal place of business is located at 140 Huguenot Street, New Rochelle, New York 10801, and is subject to the in personam jurisdiction of this Court by service of process upon its attorney, Lem E. Montgomery, Esquire, of the law offices of Butler Snow, located at 1020 Highland Colony Parkway, Suite 1400, Ridgeland, Mississippi 39157.

7.      Defendant, Hinds County, Mississippi, is located within the Southern District of the United States District Court, Northern Division.  Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the HCDC, which is also known as the County Jail for Hinds County, Mississippi.  Hinds County has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. Defendant is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as the Clerk of the Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Hinds County, Mississippi 39201.

8.      Defendant, Tyrone Lewis, is the duly elected Sheriff of Hinds County, Mississippi.  Sheriff Lewis is the policy maker for the Hinds County Sheriff's Department, which also includes the Hinds County Jail.  Sheriff Lewis was placed on notice that the Hinds County Detention Center was understaffed with untrained officers as early as August, 2013, when Dr. James Austin conducted his inspection of the jail.  Sheriff Lewis was also placed on notice about the numerous other problems at the jail including faulty cell doors.  Throughout the following months, the Hinds County Monitoring Team continued to note the jail was not adequately staffed, that the jailers were not trained, and that cell doors continued to be faulty. Sheriff Lewis ignored requests/demands to provide more jailers.  In previous litigation, Sheriff Lewis claimed that the Hinds County Detention Center staffing pattern required one (1) jailer for each housing unit.  However, on the days leading up to the Decedent's death, records clearly showed that there were as few as one (1) jailer assigned to cover four (4) housing units in all three (3) Pods.  Moreover, several of the jailers who were on duty were inadequately trained to

handle inmates with medical needs similar to the Decedent's.  Also, the jailers were inadequately supervised.

Sheriff Lewis knew that the Hinds County Jail was dangerously understaffed with untrained jailers, and it was foreseeable that this would create a dangerous environment for inmates like the Decedent.   Sheriff Lewis created a policy at the Hinds County Jail of understaffing the jail with untrained jailers.   As such, Sheriff Lewis is being sued in his individual capacity. Sheriff Lewis may be served with process at his place of employment or residence.

9.      Defendant, Joseph Ray, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Ray is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by his conduct.  Ray was at all times acting under color of law with the permission and consent of Defendant within the course and scope of his employment.  Ray may be served with process at his place of employment or residence.

10.      Defendant, Petrine Gathrite, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Gathrite is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. Gathrite was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment. Gathrite may be served with process at her place of employment or residence.

11.     Defendant, Tabitha Thomas, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.   Thomas is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. Thomas was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.   Thomas may be served with process at her place of employment or residence.

12.     Defendant, Cotina Thomas, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.   Thomas is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. Thomas was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.   Thomas may be served with process at her place of employment or residence.

13.     Defendant, Tari Thompson, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.   Thompson is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. Thompson was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.   Thompson may be served with process at her place of employment or residence.

14.     Defendant, Josephine McLaurin, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  McLaurin is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. McLaurin was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.  McLaurin may be served with process at her place of employment or residence.

15.     Defendant, Felicia Adams, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Adams is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. Adams was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.  Adams may be served with process at her place of employment or residence.

16.     Defendant, Scottie Moore, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Moore is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by his conduct.  Moore was at all times acting under color of law with the permission and consent of Defendant within the course and scope of his employment.  Moore may be served with process at his place of employment or residence.

17.     Defendant, Jasmine Cullins, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.   Cullins is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. Cullins was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.  Cullins may be served with process at her place of employment or residence.

18.     Defendant, Cherrona Noel, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Noel is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct.  Noel was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.   Noel may be served with process at her place of employment or residence.

19.     Defendant, Montreal Bingham, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.   Bingham is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by his conduct. Bingham was at all times acting under color of law with the permission and consent of Defendant within the course and scope of his employment.  Bingham may be served with process at his place of employment or residence.

20.     Defendant, Everlene Eskridge, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Eskridge is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. Eskeridge was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.  Eskeridge may be served with process at his place of employment or residence.

21.     Defendant, Jonathan Brister, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Brister is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by his conduct.  Brister was at all times acting under color of law with the permission and consent of Defendant within the course and scope of his employment.  Brister may be served with process at his place of employment or residence.

22.     Defendant, Demetrius Knight, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.   Knight is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by his conduct. Knight was at all times acting under color of law with the permission and consent of Defendant within the course and scope of his employment.  Knight may be served with process at his place of employment or residence.

23.     Defendant, V. Johnson, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject

matter.  Johnson is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by his conduct.  Johnson was at all times acting under color of law with the permission and consent of Defendant within the course and scope of his employment.  Johnson may be served with process at his place of employment or residence.

24.     Defendant, Zandra Branch, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Branch is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. Branch was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.  Branch may be served with process at her place of employment or residence.

25.     Defendant, Richard Woodhouse, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Woodhouse is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by his conduct. Woodhouse was at all times acting under color of law with the permission and consent of Defendant within the course and scope of his employment.  Woodhouse may be served with process at his place of employment or residence.

26.     Defendant, Danielle Moses, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  Moses is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct.  Moses

10

was at all times acting under color of law with the permission and consent of Defendant within the course and scope of her employment.  Moses may be served with process at her place of employment or residence.

27.     Defendant, Porsha McMultrey, was at all times employed as a deputy by Hinds County, Mississippi, and was on duty on the date and time of the incident which gives rise to the subject matter.  McMultry is directly and proximately responsible for the occurrences herein alleged, and the Decedent's damages, as alleged herein, were proximately caused by her conduct. McMultry was at all times acting under color of law with the permission and consent of Defendant within the course and scope of his employment.  McMultry may be served with process at her place of employment or residence.

28.     Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and or servants of the Hinds County Sheriff's Department and/or Defendants.  Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Decedent' damages, as alleged herein, were proximately caused by their conduct.  Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## **FACTS**

29.     On or about Monday, June 9, 2014, Decedent was arrested for DUI and taken to the HCDC.  It was not until two (2) days later that Plaintiff learned of Decedent's arrest and whereabouts.  Plaintiff immediately contacted officials at HCDC to inform them that Decedent

was an insulin-dependent diabetic who required twice-daily insulin injections; he was assured by members of the booking department and medical personnel that they were, in fact aware, and advised the Decedent was being regularly visited by nursing personnel to check his levels and administer his insulin.

30.     Despite placing multiple calls to the jail to speak to his son, or at a minimum, check on his health over the course of the next twelve (12) days, it was not until late Saturday, June 21, 2014 that Plaintiff heard anything further.   He received a telephone call from the jail's chaplain, who informed him that his son had been discovered lying face down on the floor in his cell earlier that afternoon.   He was dead.

31.     Records obtained indicate that during the early morning hours of Thursday, June 12, 2014, Decedent's cell mate alerted HCDC medical personnel that he was having difficulties. Upon examination, he was found to be in a distressed state, somewhat disoriented, his skin pale in color, clammy to the touch, and having difficulty breathing and communicating.   Nurses requested an emergency transfer, and he was taken via ambulance to the emergency department at Central Mississippi Medical Center, where despite the conflicting stories related by the accompanying HCDC personnel, it was determined that he had gone without his insulin for four (4) days.  He was diagnosed with uncontrolled Diabetic Ketoacidosis, his glucose level reading 587 mg/dl.  Considered to be in critical condition and requiring more specialized care, he was transferred to River Oaks Hospital in Flowood, Mississippi.

32.     At River Oaks, he was stabilized and admitted, where he remained until his discharge to the HCDC on Tuesday, June 17, 2015.   He was placed on a restricted, 1800 calorie per day diabetic diet, and prescribed the following: one (1) 81mg aspirin per day, to be taken orally; 50mg Lopressor twice daily, taken orally; 2-4mg Ativan every four to six hours as

needed, taken orally; 20 units of insulin every morning, administered subcutaneously, and 15 units of insulin every evening, administered subcutaneously.

33.     Records indicate that upon his return to HCDC, he was placed in a "Sheltered Housing Unit", ordered a 2000 calorie ADA diet, and ordered the prescribed medications, with the exception of the Ativan.  Wednesday, June 18, 2014, orders were given for his transfer from the "Sheltered Housing Unit".  On Thursday, June 19, 2014, a "Psychiatric Encounter Record" indicates that Decedent was found to suffer from a panic disorder as well as diabetes; the Doctor's Order indicates that prescriptions for 2 mg Clonazepam and 45 mg Remeron were ordered and faxed to the pharmacy- however, the medication administration flowchart obtained has no indication that these two (2) medications were ever provided the Decedent.  The sole remaining record obtained is by far the most important, and most damning.  The "Medical and Healthcare Services Diabetic Flow Sheet" indicates that Decedent received twice daily insulin injections as ordered, beginning upon his return from the hospital on June 17, 2014- continuing until June 20, 2014, when he received **only** the morning injection of 20 units.  There are no further entries.

34.     On June 20, 2014 at approximately 3:30 p.m., Ndidi Nwagboso, LPN at Defendant Quality Choice, called for all Pods to send diabetics to the medical department so that their medicine could be administered.  Nurse Nwagboso was advised that a shakedown was in progress and that no inmates would be moved.  Nurse Nwagboso made repeated calls at 4:00 p.m., 5:00 p.m. and 6:00 p.m.  Each time she was told that there would be no inmate movement due to a shake down in progress.  At approximately 7:00 p.m., Nurse Nwagboso went to "C" Pod where Decedent was housed.  Nurse Nwagboso was informed that none of the inmate's doors would be opened due to inadequate staffing and safety concerns.  Nurse Nwagboso administered

Decedent's oral medications, yet as the deputies would not open the door, she was unable to provide him with his insulin injection. According to Nurse Nwagboso, the door could not be open because the "system was down". Nurse Nwagboso also noted that the lights were not in operation in "C" Pod. Upon information and belief, based upon information supplied by Defendant Hinds County, the jailer who refused to open the cell door was Tari Thompson or one or more of the other individual defendants named herein. Nurse Nwagboso left "C" Pod and returned to medical. At 9:30 p.m., Nurse Nwagboso called back to "C" Pod advising the jailers to send Decedent to medical. Decedent was never sent to medical.

35.     On June 21, 2014 at approximately 5:00 a.m., Linda Morgan, LPN at Quality Choice, went to "C" Pod to administer Decedent his medication. Deputy Montreal Bingham escorted Nurse Morgan. The lights in "C" Pod were again not working. Nurse Morgan had a brown envelope with Decedent's name on it, which showed that he was located in Cell No. 5165 in "C" Pod. However, Nurse Morgan determined that there *was* no Cell No. 5165. Nurse Morgan and Deputy Bingham went to Cell No. 5164, which was occupied by two (2) inmates. One (1) inmate came to the cell and was asked if he was Merritt Phillips; the inmate replied "no". He was asked if his cellmate was "Merritt Phillips" and the inmate replied, "I don't think so". Deputy Bingham and Nurse Morgan could not locate Decedent, and as a result Nurse Morgan did not administer his insulin or test his glucose levels. Decedent was found dead in his cell at approximately 11:30 a.m. on June 21, 2014.

36.     Merritt Phillips was deprived of life sustaining medication after approximately 3:30 p.m. on June 20, 2014, and he was discovered dead at approximately 11:15 a.m. on June 21. The individual defendants named herein caused, or contributed to the cause of his death, by acts and/or omissions which deprived Phillips of life sustaining medication. The acts and omissions

14

of Defendants were wrongful, tortious, reckless, objectively and subjectively unreasonable, undertaken with deliberate indifference to Phillips' constitutional rights and in conscious disregard for the safety and constitutional rights of Phillips, and caused the death of Phillips and the damages as set forth herein.

37.     The actions of the individual Defendants violated Decedent's constitutional right to medical care and were also deliberately indifferent to his medical needs.  Defendants knew, or should have known, that failing to give Decedent his insulin would result in death.  As a result of their actions and inactions, Merritt Phillips died. Defendants, and/or one or more of them, had a duty to ensure that all inmates were secure and accounted for on C Pod.

38.     On June 21, 2014 at approximately 6:00 a.m., Defendants, or one or more of them, took over supervision of  "C" Pod.  Deputies are required by Hinds County's policies and procedures to conduct safety checks of all inmates during their shift.  No deputy checked on Decedent during the approximately five (5) hours from the beginning of the shift until Decedent was discovered dead.   According to Decedent's cell mate, Decedent had been hitting the intercom button in his cell requesting help.  An unknown deputy responded on the intercom but no one ever came to his assistance.

39.     An autopsy was performed by the Mississippi State Medical Examiner's Office on June 23, 2014.  However, the official cause of death was not determined until after the toxicology report was issued on July 14, 2014; the report was executed by Lisa Funte, M.D., PhD, on August 14, 2014 and certified on August 18, 2014.  Decedent was determined to have glucose levels higher than 500 mg/dl, with the cause of death listed as Diabetic Ketoacidosis.  In her summary, Dr. Funte stated that "the detention center had reportedly been on a lock down cycle, and the decedent had reportedly not received his insulin."

40.    Hinds County officials, including the Board of Supervisors and the Sheriff, have long been aware of the dangerous, violent and poor conditions in existence at the Hinds County Detention Center.  Representatives from the Hinds County Sheriff's Department have regularly advised the Hinds County Board of Supervisors ("Board") about the many issues in existence at the jail, requesting that the problems be addressed.   In response to numerous repeat incidents of violence and inmate uprisings that occurred at the facility within a two-year span of time, as well as the public outcry and media attention garnered by said incidents, the Hinds County Circuit Court entered an Order on July 23, 2013, mandating that the Hinds County Grand Jury perform an intensive and in-depth evaluation of the conditions of the Detention Center, and make its recommendations to the Court as to its findings.

41.    On September 17, 2013 the Report of the Hinds County Grand Jury was filed with the Circuit Clerk of the First Judicial District of Hinds County, wherein it determined that "the Hinds County Detention Center (HCDC) is in deplorable condition and inadequately staffed.  In its present state, the HCDC poses major security risks to inmates, staff of the facility, visitors to the facility, and to the citizens of Hinds County.  The facility also poses a major liability risk to Hinds County."  The Report adopted the Assessment Report generated by Dr. James Austin, Ph.D; his sixteen (16) page Report prepared at the request of the Grand Jury documented numerous egregious and emergent issues in existence at the Detention Center warranting immediate correction. *See* Report of Hinds County Grand Jury attached hereto and incorporated herein by reference as Exhibit "1".   Despite the Grand Jury Order, compliance by Hinds County officials has been minimal, at best.

42.     In response to an egregious number of serious incidents that have occurred in recent years at the HCDC- many of which having taken place after the Grand Jury's Report- that have not only resulted in serious physical harm (including death) to both staff and inmates, but undue property damages, financial loss and the denial of inmates constitutional rights, the United States Department of Justice's Civil Rights Division ("DOJ") instituted an in-depth investigation into the facility and its' conditions.  On May 21, 2015 the DOJ released its findings, pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997.  The twenty-nine (29) page Report (hereinafter, "DOJ Report") concludes that the HCDC is in violation of the Eighth and Fourteenth Amendments of the United States Constitution, outlining therein a pattern and practice of Constitutional violations and mandating the immediate implementation of very specific remedial measures.  *See* Report attached hereto and incorporated herein by reference as Exhibit "2".

## **1983 CAUSES OF ACTION:**

## **UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT**

43.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 42 hereinabove.  The Defendants, acting by and through its elected and appointed officials, acted with deliberate indifference in the allegations listed herein.

44.     The HCDC was supervised by its elected sheriff, Tyrone Lewis, its appointed jail administrator, Diane Gatson-Riley, and Warden Phil Taylor at all times pertinent to this action. All had the responsibility and duty to supervise, oversee and control the training and job performance of jail staff and the operation of the jail.  All had the duty to see that the jail was maintained in a safe and sanitary condition, suitable for human occupation and compliant with constitutional requirements.  All had the duty to ensure that the jail officials, jailers and jail staff

acted in compliance with the laws and Constitutions of the State of Mississippi and of the United States, and did not deprive inmates of their rights guaranteed under the United States Constitution and laws.   This included the duty to ensure that the conditions of inmate confinement did not deprive inmates of their right to reasonable, adequate and timely medical care and did not otherwise impose constituted cruel and unusual punishment.   This likewise included a duty to see that the conditions of confinement did not impose *any punishment on pretrial detainees.*

45.   At all relevant times herein, Lewis, Gatson-Riley and Taylor acted under the color of state law, under the cloak of their respective authority as sheriff, jail administrator and warden, and as agents, servants, employees and officials of Defendant, Hinds County.

46.   At all relevant times herein, Lewis enjoyed final policymaking authority over the policies, practices and customs at the HCDC, and displayed and exercised this authority over the policies, practices and customs at the HCDC.   Plaintiff asks that the Court take judicial notice that Lewis enjoyed final policymaking authority for the HCDC.

47.   As alleged in the DOJ Report, Hinds County and Lewis maintained and operated the HCDC in such a manner that the conditions of confinement resulted in a comprehensive and pervasive pattern of serious deficiencies in providing for the basic human needs of the inmates detained in the HCDC in every aspect.

48.   As alleged in the DOJ Report, the conditions of confinement also included a jail that was deficient in so many respects that it was not suitable for human confinement.   These conditions resulted in the infliction of punishment on each and all of the inmates who were forced to live there, including Decedent for the last days of his life.   Such conditions violated Decedent's due process rights, including the right, as a pretrial detainee, not to be punished

18

through the conditions of his confinement, in violation of the Fourteenth Amendment to the United States Constitution.

49.     As shown in the DOJ Report, the conditions of confinement also included many policies, practices, and customs that deprived most, if not all, inmates, including Decedent, of their right to reasonable, adequate and timely medical care, and their right not to be punished during their pretrial confinement.   These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Lewis in his position as the final policymaker of the HCDC.   They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

50.     Some of the policies, customs and practices, which constituted elements of the conditions of confinement in the HCDC, included, but were not limited to:

A)     Regularly denying, delaying or interfering with inmate requests for medical care during lockdown;

B)     Ignoring, delaying or failing to promptly comply with the treatment orders of the doctors;

C)     Refusing to accommodate the disabilities of inmates; and

D)     Not promptly providing reasonable medical care and treatment.

51.     The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated and pervasive deprivations of inmates' rights to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at the HCDC.

52.     Each of the foregoing policies, customs and practices were implemented, approved, ratified, known and/or constructively known by the officials of Hinds County, including Lewis, Gatson-Riley and Taylor, during Decedent's confinement.

53.     Each of the foregoing policies, customs and practices constituted elements of the conditions of Decedent's confinement and, both individually and in combination, were moving forces in the deprivation of Decedent's respective rights including his right to reasonable, adequate and timely medical care under the Fourteenth Amendment, his right as a pretrial detainee and not to be punished under the Fourteenth Amendment.

54.     From Defendants Hinds County and QCCHC, jointly and severally, Plaintiff seeks recovery of all compensatory damages to which the Estate of Merritt Benjamin Phillips is entitled as a result of the conditions of Decedent's confinement, and the damages he suffered therefrom.  Plaintiff further seeks recovery of punitive damages from Defendant QCCHC for its conduct in callous and reckless disregard for the rights, welfare and medical needs of Decedent. Plaintiff further seeks recovery of punitive damages from each of the individually named Defendants herein, including Defendants Tyrone Lewis, Joseph Ray, Petrine Gathrite, Tabitha Thomas, Contina Thomas, Tari Thompson, Josephine McLaurin, Felicia Adams, Scottie Moore, Jasmine Cullins, Cherrona Noel, Montreal Bingham, Everlene Eskridge, Jonathan Brister, Demetrius Knight, V. Johnson, Zandra Branch, Richard Woodhouse, Danielle Moses, and Porsha McMultrey.

**EPISODIC ACTS OR OMISSIONS**

55.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 54 hereinabove.

56.     As demonstrated in the DOJ Report, Hinds County and Lewis maintained and operated a jail in such a manner as to cause the pervasive deprivation of inmate constitutional rights in every respect and at every level.  Decedent was forced to live in this jail and endure the action and inaction of its officials, as well as the jailers and jail staff acting in accordance with jail policies, customs and practices, under color of law, exhibiting callous and deliberate indifference, in depriving him of his rights guaranteed under the Constitution and laws of the United States.

57.     Hinds County and Lewis, as well as the individual defendants named herein, including jailers and jail staff acting pursuant to jail policy, practice and customs, created and required inmates to live in a jail that was deficient in so many respects that it was not suitable for human confinement.  These actions resulted in the infliction of punishment on each of the inmates who were forced to live there, including Decedent for the last days of his life.

58.     As shown hereinabove, Hinds County and Lewis and/or other defendants named herein adopted, implemented and permitted many other policies, practices and customs that deprived most, if not all, inmates, including Decedent, of their right to reasonable, adequate and timely medical care and their right not to be punished during their pretrial confinement.  These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Lewis as final policymaker of the HCDC.  They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

59.     Some of the policies, customs and practices of the HCDC included, but were not limited to:

A)     Regularly denying, delaying or interfering with inmate requests for medical care during lockdowns;

B)     Regularly denying or delaying all inmate requests and doctor's orders for inmate medical care through a specialist;

C)     Ignoring, delaying or failing to promptly comply with the treatment orders of the jail doctor and/or outside physicians;

D)     Refusing to accommodate the disabilities of inmates;

E)     Refusing to deliver an inmate's medication to that inmate; and

F)     Refusing to move seriously ill patients to a hospital or other location where they can receive appropriate care, instead leaving them in a jail cell and leaving no one but their cellmates to care for them.

60.     The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated, pervasive and persistent deprivations of inmates' rights to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at the HCDC.  Decedent suffered numerous deprivations of his right to reasonable, adequate and timely medical care due to the actions of these policymakers, their policies, the jailers and the jail staff.

61.     QCCHC employees and the individual defendants named herein acted with deliberate indifference and callous and reckless disregard for the rights, welfare and medical needs of and other constitutional rights of Decedent.

62.     Jailers and jail staff, including the individual defendants named herein, acted, or failed to act, pursuant to the official policies, customs and practices of Lewis and Hinds County, or at the direction of and with the approval of these officials, in depriving Decedent of his rights as described herein.  The policies, practices and customs were moving forces in the action and

inaction for jailers, and jail staff, and these jailers and jail staff acted with deliberate indifference to the rights, welfare and medical needs of and other constitutional rights of Decedent.

63.     The deprivation of Decedent's rights by defendants, as described herein, directly and proximately caused Decedent to suffer severe physical and mental personal injury and damages.  These included premature loss of life, excruciating pain and suffering, extraordinary mental and emotional pain and anguish, and significant disability and physical impairment.

64.     From Defendants Hinds County, QCCHC, Sheriff Lewis, Joseph Ray, Petrine Gathrite, Tabitha Thomas, Contina Thomas, Tari Thompson, Josephine McLaurin, Felicia Adams, Scottie Moore, Jasmine Cullins, Cherrona Noel, Montreal Bingham, Everlene Eskridge, Jonathan Brister, Demetrius Knight, V. Johnson, Zandra Branch, Richard Woodhouse, Danielle Moses, Porsha McMultrey, jointly and severally, Plaintiff seeks recovery of all compensatory damages to which the Estate of Merritt Benjamin Phillips is entitled.  Plaintiff further seeks recovery of punitive damages from QCCHC, Hinds County, Sheriff Lewis, and the individual defendants named herein (all in their individual capacities) for the conduct in callous and reckless disregard for the rights, welfare and medical needs of Decedent.

## DENIAL OF MEDICAL CARE

65.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 64 hereinabove.

66.     Defendants' failure to properly oversee and manage the Decedent's serious health condition directly caused his death.  In doing so, Defendants' violated clearly established constitutional rights, including but not limited to:

a)      Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

b)      Decedent's right not to be deprived of liberty without due process of law;

c)      Decedent's right to be safe and protected from injury while in Defendants' custody; and

d)      Decedent's right to necessary medical treatment for his very serious medical condition.

67.      By their failure to provide the Decedent with the medically necessary medications and care required to sustain his life, Defendants' actions deprived him of the rights secured for him by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

68.      As a direct and foreseeable result of Defendants' actions, Plaintiff has suffered damage including, but not limited to, emotional distress, mental anguish, as well as pain and suffering.

## NEGLIGENCE/GROSS NEGLIGENCE

69.      Plaintiff incorporates all allegations set forth in Paragraphs 1 through 68 hereinabove.

70.      At all times relevant herein, Defendant QCCHC and its employees had a duty to exercise ordinary care for the inmates at HCDC, including the Decedent.   QCCHC and its employees breached that duty, by failing to use the ordinary care that a reasonable person would use to avoid and prevent injury to others, i.e. in the case *sub judice,* to provide the appropriate, reasonable and necessary medical care to accomplish same - the failure of which led directly to the incontrovertible permanent damage sustained by the Plaintiff.  This breach was so egregious as to amount to gross negligence.

71.      The death of Merritt Benjamin Phillips was the reasonably foreseeable outcome of QCCHC's employees' acts and omissions.   These acts and/or omissions were substantial

factors in causing his death, and the damages suffered by the Plaintiff.

## MEDICAL MALPRACTICE

72.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 71 hereinabove.

73.     Defendant QCCHC, by and through its employees, agents, or representatives, was negligent and/or grossly negligent in failing to properly diagnose and treat Decedent.

74.     The employees of QCCHC were acting within the course and scope of their employment with QCCHC.  QCCHC is liable for the acts and omissions of its employees pursuant to the Mississippi Medical Malpractice Statute and/or through application of principles of master/servant or employer/employee liability, respondeat superior, or other common law or statutory impositions of vicarious liability.

75.     QCCHC, by and through its employees, agents, or representatives, breached their duties to Decedent by failing to properly diagnose and treat him, despite his ever-worsening physical symptoms, especially in light of his well-documented medical history, of which they were made aware.  QCCHC, by and through its employees, agent, and/or representatives, failed to exercise the degree of care, skill and learning expected of reasonably prudent health care providers in the State of Mississippi acting in the same or similar circumstances, and breached the applicable standard of care.  These Defendants committed medical malpractice under the law by failing to diagnose and treat Decedent.  This medical malpractice directly and proximately resulted in the harms and damages alleged herein.

## NEGLIGENT HIRING AND SUPERVISION

76.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 75 hereinabove.

77.     Plaintiff alleges Defendants, including Defendant QCCHC, negligently hired, supervised, and retained its employees and agents, inter alia, by 1) failing to properly care for and ensure the Decedent's health, safety and well-being while incarcerated at HCDC; b) properly train, supervise, discipline, retain, hire and/or discharge its employees, agents, and/or representatives; and c) were otherwise negligent in their care and treatment of the Decedent, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR

78.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 77 hereinabove.

79.     QCCHC's employees, agents, and/or representatives acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent Decedent's death.  At all times relevant, each Defendant owed a duty to the Decedent to ensure his health, safety and well-being, and the Defendants breached this duty.  The actions and inactions of Defendants, including Defendant QCCHC, led directly to the death of Merritt Benjamin Phillips.  QCCHC is liable for the actions of their employees, agents, and/or representatives which were undertaken during the course and scope of their employment.

## DECLARATORY JUDGMENT ACTION AND EQUITABLE RELIEF

80.     The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 79 hereinabove.

81.     Pursuant to Fed. R. Civ. P. 57, Plaintiff requests that this Court declare that the practices, policies, rules and customs complained of in this Complaint are unlawful in that they violate the constitutional rights of citizens.

82.     Further, Plaintiff requests that this Court enter its Order to permanently enjoin the Defendants and their agents, officers and employees from engaging in all practices found by this Court to be in violation of the Constitution of the United States of America, and order that Defendants adopt and implement a comprehensive system to safeguard against constitutional violations and illegal conduct, including implementation of a system designed to prevent against the future occurrence of such acts as complained of herein, and to protect citizens from like constitutional violations in the future, and to require Defendants to submit a plan to this Court outlining the steps it will take to prevent such future conduct and to comply with the Orders of this Court.

## PUNITIVE DAMAGES

83.     The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 82 hereinabove.

84.     QCCHC, its employees, Hinds County, Sheriff Tyrone Lewis, and Hinds County employees Joseph Ray, Petrine Gathrite, Tabitha Thomas, Contina Thomas, Tari Thompson, Josephine McLaurin, Felicia Adams, Scottie Moore, Jasmine Cullins, Cherrona Noel, Montreal Bingham, Everlene Eskridge, Jonathan Brister, Demetrius Knight, V. Johnson, Zandra Branch, Richard Woodhouse, Danielle Moses, Porsha McMultrey, in their individual capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner as previously described herein.   The actions of these Defendants warrant punitive damages.

85.     The Defendants' actions listed in ¶84 exhibited gross negligence and direct disregard of the safety of the Decedent.   Punitive damages should be awarded against the

Defendants.   Defendants' tortious actions caused the wrongful death of the Decedent, and therefore, Plaintiff's emotional distress and mental anguish.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff requests that upon a jury trial of this cause, the Court will award all relief due Plaintiff as set forth herein, including but not limited to the following:

A.      Declare that the practices, policies, rules and customs complained of in this Complaint are unlawful in that they violate the constitutional rights of citizens;

B.      Permanently enjoin the Defendants and their agents, officers and employees from engaging in all practices found by this Court to be in violation of the Constitution of the United States of America, and order that Defendants adopt and implement a comprehensive system to safeguard against constitutional violations and illegal conduct, including implementation of a system designed to prevent against the future occurrence of such acts as complained of herein, and to protect citizens from like constitutional violations in the future, and to require Defendants to submit a plan to this Court outlining the steps it will take to prevent such future conduct and to comply with the Orders of this Court;

C.      Order that the Defendants pay Plaintiff a sum in excess of $75,000.00 as compensatory damages arising from the aforesaid misconduct of Defendants as set forth herein, and enter judgment against Defendants and in favor of Plaintiff in the amount of $7,500,000.00, or in such amount as found due and owing by the jury and/or this Court;

D.      Order that the Defendants pay to Plaintiff a sum in punitive damages sufficient to deter these Defendants and others similarly situated from like conduct in the future;

E.      Retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendants to file such reports as the Court deems necessary to evaluate such compliance;

F.      Order the Defendants to pay Plaintiff's costs and expenses, including expert witness fees and reasonable attorney's fees, and prejudgment interest on all amounts found due and owing, including, but not limited to, those attorney's fees found properly awardable pursuant to 42 U.S.C. § 1988(b); and

G.      Grant such other and further relief, of either an equitable or legal nature, to the Plaintiff as the Court deems just and proper.

RESPECTFULLY SUBMITTED, THIS the 14th day of October, 2015.

MERRITT PAXTON PHILLIPS, PLAINTIFF

BY:    _/s/ Charles R. Mullins_____
       CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi  39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
merridac@coxwelllaw.com

BOBBY L. DALLAS (MB# 5778)
MICHAEL T. JAQUES (MB# 8708)
SESSUMS DALLAS, PLLC
240 Trace Colony Park Drive, Suite 100
Ridgeland, Mississippi 39157
Telephone: (601) 933-2040
Facsimile: (601) 933-2050
bdallas@sessumsdallas.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Charles R. Mullins, counsel of record for the Plaintiff, Merritt Paxton Phillips, in the above-styled and referenced matter, do hereby certify that I have this caused the above and foregoing *Amended Complaint* to be filed via the MEC system, which sent notification thereof to the following persons of interest:

> J. Lawson Hester, Esquire
> Jason E. Dare, Esquire
> WYATT, TARRANT & COMBS, LLP
> Post Office Box 16089
> Jackson, Mississippi 39236-6089
> lhester@wyattfirm.com
> jdare@wyattfirm.com
>
> Lem E. Montgomery, III, Esquire
> Butler Snow LLP
> Post Office Box 6010
> Ridgeland, Mississippi 39158-6010
> lem.montgomery@butlersnow.com
>
> J. Michael Coleman, Esquire
> Carl Hagwood, Esquire
> HAGWOOD ADELMAN TIPTON, PC
> Post Office Box 14188
> Jackson, Mississippi 39236-4188
> mcoleman@hatlawfirm.com
> chagwood@hatlawfirm.com

THIS, the 14th day of October, 2015.


>  _/s/ Charles R. Mullins_____
> CHARLES R. MULLINS